IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TERESA N. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-047 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Teresa N. Williams ("Plaintiff") appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff protectively applied for SSI on January 30, 2009, alleging a disability onset date of July 15, 2008. Tr. ("R."), pp. 129-36. The Social Security Administration denied Plaintiff's application initially, R. 47-50, and on reconsideration, R. 58-61. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 63, and the ALJ held a hearing on April 8, 2011. R. 32-44. At the hearing, the ALJ heard testimony from Plaintiff,

who was represented by counsel, and from Kenneth L. Bennett, a Vocational Expert ("VE").

Id. On June 2, 2011, the ALJ issued an unfavorable decision. R. 12-26.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 30, 2009, the application date (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; history of bronchitis; obesity; depression; and borderline intellectual functioning (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)[1] except she is limited to performing work activities with an SVP of 1-2, that do not require any writing. Claimant should be able to learn the job by doing, rather than by reading written directions. Additionally, she should avoid concentrated exposure to fumes and dust. The claimant has no past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since January 30, 2009, the date the application was filed.

R. 15-26.

When the Appeals Council denied Plaintiff's request for review on January 16, 2013, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42

---

[1] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find that she qualified for automatic disability under Listing 12.05(B) or 12.05(C), both of which pertain to intellectual disability.[2] (See doc. no. 10 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

---

[2] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Plaintiff Failed to Establish Intellectual Disability Under Listing 12.05(B) or (C).

Plaintiff argues the ALJ erred by concluding that she had borderline intellectual functioning, as opposed to intellectual disability, and argues that the ALJ should have found that she qualified for automatic disability because she "minimally meets Listing 12.05(C) and likely 12.05(B)." Pl.'s Br., p. 4. Specifically, Plaintiff argues that the findings of Dr. John

Whitley during two consultative examinations, including two sets of IQ scores, establish intellectual disability. Id. at 3-7.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

### 1. Intellectual Disability Under Listings 12.05(B) and (C).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) (stating that an impairment must satisfy the

diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." Id. Alternatively, 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### 2. Plaintiff's IQ Scores Are Not Valid.

Here, the ALJ thoroughly discussed Plaintiff's IQ scores,[3] and properly relied on substantial evidence in finding Plaintiff's IQ scores are invalid and she is not intellectually disabled. See R. 17-18. During Dr. Whitley's first examination, on June 3, 2009, Plaintiff received a full scale IQ score of 46. R. 449. However, as the ALJ noted, Dr. Whitley concluded the test results were "a mild underestimation of her true abilities. She appeared to give up rather easily on test items." R. 17-18, 448. Dr. Whitley classified Plaintiff as "borderline intellectual function to mental retardation," opining that "[Plaintiff's] functioning is felt to be somewhat along the continueum [sic] of borderline to possible mental retardation." R. 17, 449. Plaintiff received a full scale IQ score of 40 during Dr. Whitley's second examination. R. 18, 545. As the ALJ pointed out, Dr. Whitley found that Plaintiff "put forth very poor effort," "was obviously exaggerating her level of dysfunction during this evaluation," and that her test results were "incongruent with her reported level of functioning." R. 18, 23, 545-46. Ultimately, Dr. Whitley concluded that Plaintiff was malingering. R. 23, 545. Based on Dr. Whitley's findings, the ALJ properly found that Plaintiff's IQ scores are invalid and do not satisfy the requirements of Listing 12.05(B) or (C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a).

Plaintiff makes much of the fact that Dr. Whitley only found the first score to be a mild underestimation, arguing that "[s]ince the full IQ score was 24 points below what would be considered mildly mentally retarded under 12.05(C), a mild underestimation would clearly mean that she still would meet Listing 12.05(C)." Pl.'s Br., p. 5. However, Plaintiff provides no authority for this conclusory assertion, and the Listing does not grant the ALJ authority to

---

[3] The ALJ discussed Plaintiff's IQ scores at step two, explaining his finding that she had the severe impairment of borderline intellectual functioning. R. 17-18.

make adjustments to or estimations of invalid test scores. Because the ALJ did not err in assessing Plaintiff's IQ scores, and Plaintiff was therefore not entitled to a finding of disability under Listing 12.05(B) or (C), the issue provides no basis for remand.

Plaintiff also argues that Dr. Whitley failed to provide any reason to conclude Plaintiff was malingering, and that his evaluations were inconsistent. Pl.'s Br., p. 5. However, Dr. Whitley explained that Plaintiff "put forth very poor effort," and "gave up on even simple types of tasks asked of her." R. 23, 544. Moreover, a review of the two reports reveals remarkably similar findings in the sections about which Plaintiff complains. R. 446-50, 542-46.

### 3. Plaintiff Failed to Establish Deficits in Adaptive Functioning Initially Manifesting During the Developmental Period.

Plaintiff also did not make the showing required by the introduction to Listing 12.05, that her subaverage intellectual functioning is severe enough to cause "deficits in adaptive functioning" initially manifesting prior to age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). Indeed, the only diagnosis on the record as to Plaintiff's intellectual functioning is Dr. Whitley's diagnosis of borderline intellectual functioning to mental retardation. R. 18, 449; see also Jordan v. Comm'r of Social Sec. Admin., 470 F. App'x 766, 768-69 (11th Cir. 2012) (*per curiam*) (borderline intellectual functioning and mental retardation are mutually exclusive diagnoses).

Furthermore, the ALJ properly found that Plaintiff has significant adaptive functioning despite any intellectual shortcomings, citing Dr. Whitley's findings that she could manage her own finances, cook using the stove and microwave, help care for her mother during the day, do her own shopping, help with household chores, and adequately dress and

bathe herself.[4]  R. 19, 22-23, 447-49, 543-46.  The ALJ also relied on Dr. Whitley's finding that Plaintiff could "engage in conversational speech," "understand and follow menial and simple work tasks as she has done in the past," "follow basic directions," and "organize her own schedule."  R. 19-20, 543-46.  The ALJ revisited these findings while assessing Plaintiff's subjective complaints during his RFC determination, noting Dr. Whitley's conclusion that Plaintiff was malingering.  R. 23, 542-46.  In sum, the ALJ discussed the evidence of Plaintiff's adaptive functioning at length, but it did not establish "deficits in adaptive functioning initially manifesting during the developmental period."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.

Plaintiff argues that the opinion of Dr. Fredrick House, who performed a physical consultative examination, demonstrates that Plaintiff meets either Listing 12.05(B) or (C). Pl.'s Br., p. 7.  On the contrary, Dr. House merely stated, like Dr. Whitley, that Plaintiff's functioning "suggests she is borderline to mildly mentally retarded."  R. 472.  Ultimately, Dr. House opined that Plaintiff had "mild mental deficiency," further supporting the ALJ's determination that Plaintiff had borderline intellectual functioning, but not intellectual disability.  R. 472.

Plaintiff characterizes records from her elementary and high school as indicating she is "mildly mentally retarded."  Pl.'s Br., p. 6.  However, the only such indication in these records is one teacher's suggestion that Plaintiff be placed in an Educatable Mentally

---

[4] Much of the ALJ's discussion of Plaintiff adaptive functioning is contained in his analysis of Plaintiff's other mental disorders at step three, during which he analyzed her functioning under the "paragraph B" criteria and found that Plaintiff had only mild restrictions in activities of daily living, and moderate difficulties in social functioning, concentration, persistence, or pace.  See R. 19-20.  The paragraph B criteria are related to assessment of intellectual disability, and even constitute the criteria of Listing 12.05(D). The ALJ also discussed Plaintiff's adaptive functioning in his RFC determination.  See R. 22-23.

Retarded class for one or two years. (Doc. no. 10-1, p. 5.) The records do not contain any diagnoses or intelligence test scores, and consist primarily of teachers' comments regarding Plaintiff's inattentiveness, lack of work ethic, and lack of parental support. (See generally id.) Thus, the records do not support an inferred diagnosis of intellectual disability, Hodges, 276 F.3d at 1269, and they fail to satisfy the diagnostic definition of Listing 12.05.

In sum, even if Plaintiff's IQ scores were valid, which they were not, the medical evidence of record did not demonstrate sufficient deficits in adaptive functioning to satisfy the diagnostic definition of intellectual disability under Listing 12.05. Although the ALJ did not specifically mention Listing 12.05 at step three, but rather discussed her IQ scores and adaptive functioning at steps two and three and in his RFC determination, there is no requirement that the ALJ "mechanically recite the evidence" leading to his step three determination. See Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing Edwards v. Heckler, 736 F.2d 625, 629 (11th Cir. 1984)).[5]

### B. A Remand Allowing Plaintiff to Submit Academic Records Is Not Appropriate in this Case.

Plaintiff surmises that the ALJ did not consider Plaintiff's academic records, since they are not in the transcript, and therefore requests a remand pursuant to sentence six of 42 U.S.C. § 405(g). Pl.'s Br., pp. 6-7. Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good

---

[5] Indeed, Plaintiff does not take issue with the sequence of the ALJ's analysis, only with his conclusion that she is not intellectually disabled. See generally Pl.'s Br. Furthermore, remanding this case for the ALJ to reevaluate Plaintiff's condition is unnecessary, since Plaintiff has not presented a valid IQ score that would satisfy any subpart of Listing 12.05, and thus any error made by the ALJ did not alter the outcome of Plaintiff's case. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (*per curiam*) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decisions will stand."); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's error harmless where correcting it would not change the decision).

cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Social Sec., 457 F. App'x 850, 853 (11th Cir. 2012) (*per curiam*) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable."). In order to demonstrate that remand is appropriate, a claimant must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (*per curiam*) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

Here, the purportedly new evidence would not change the administrative result because, as explained above, Plaintiff does not have a valid IQ score for purposes of Listing 12.05. Enix, 461 F. App'x at 865. Furthermore, Plaintiff's counsel was asked at the hearing if there were additional records that needed to be included in the record. R. 34. Plaintiff's counsel responded, "No, sir, we've sent you everything we have and we've gotten everything we requested." Id. Plaintiff's counsel then quoted the records at length during opening argument, and again in correspondence to the Appeals Council, indicating that they are not new, but in fact were available at that time. R. 35; Caulder, 791 F.2d at 878 ("Nonexistence of the evidence at the time of the administrative proceedings may constitute good cause."). Plaintiff's counsel did not complain to the Appeals Council that the ALJ failed to consider the evidence or that they should be included in the record, R. 267-69, nor does she provide

any reason for her failure to provide the records at the administrative level. Accordingly, a remand allowing Plaintiff to submit the academic records in question is not appropriate.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 8th day of May, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA